# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ALABAMA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> STEVE MARSHALL, in his official capacity as Alabama Attorney General, *et al.*, <br><br> *Defendants*. | Civil Action No. 2:24-cv-420 |

**[PROPOSED] *AMICUS* BRIEF OF THE REPUBLICAN NATIONAL COMMITTEE AND THE ALABAMA REPUBLICAN PARTY IN SUPPORT OF DEFENDANTS' OPPOSITION TO PRELIMINARY INJUNCTION MOTION**

**TABLE OF CONTENTS**

STATEMENT OF INTEREST ............................................................................................... 3

INTRODUCTION ................................................................................................................... 4

ARGUMENT ........................................................................................................................... 5

    I.   Federal courts have rejected Plaintiffs' effort to characterize the conduct of facilitating absentee voting as First Amendment–protected speech. ................................................... 5

    II.  Federalism requires respect for the State's interests in regulating elections. ................... 11

CONCLUSION ...................................................................................................................... 13

CERTIFICATE OF SERVICE .............................................................................................. 15

## STATEMENT OF INTEREST

The Republican National Committee is a national committee under 52 U.S.C. §30101. It manages the Republican Party's business, coordinates election strategy, and supports Republican candidates nationwide. The Alabama Republican Party is a recognized political party that works to promote Republican values and assist Republican candidates in federal, state, and local races. In the upcoming November general election, Republican candidates will appear on the ballot throughout Alabama for local, state, and federal office.

The RNC and the ALGOP have extensive expertise in election law, election administration, and voting rights. They've filed dozens of amicus briefs in election-related cases across the country. And the RNC is a party in cases in other states raising issues similar to those presented here. *See, e.g.*, *VoteAmerica v. Raffensperger*, No. 1:21-cv-1390 (N.D. Ga.); *In re Ga. S.B. 202*, No. 1:21-mi-55555 (N.D. Ga.).

## INTRODUCTION

Alabama's Senate Bill 1 straightforwardly prohibits four actions that, in the judgment of the Alabama Legislature, could result in undue influence on absentee voters' exercise of the franchise. These actions are (1) providing a payment or gift to a third party to help distribute, complete, or deliver a voter's absentee ballot application; (2) receiving such a payment or gift; (3) distributing a prefilled absentee ballot application to a voter; and (4) submitting an absentee ballot application for another person. Ala. Code §17-11-4(b)(2), (c)(2), (d).

Plaintiffs' challenge to SB 1 is foreclosed by precedent several times over. To begin with, their primary First Amendment arguments have been rejected by numerous courts around the country. Prefilling and submitting absentee ballot applications is not protected expressive conduct because these activities do not express any particular message without the aid of accompanying speech. As a matter of both precedent and logic, these activities are "a means of facilitating voting, not a means of communicating a message." *Feldman v. Ariz. Sec'y of Stat's Off.*, 840 F.3d 1057, 1084 (9th Cir. 2016), *reversed on other grounds*, 843 F.3d 366 (en banc). And Plaintiffs' arguments that SB 1 curtails their core political speech and freedom of association are even further afield: The law leaves Plaintiffs free to speak any message they wish about voting and does not penalize their association or group advocacy.

Plaintiffs' challenge also fails because the interests supporting SB 1 are weighty and merit deference from this Court. Alabama has compelling interests in election security, preventing voter confusion, and minimizing undue influence, and courts have recognized that laws like SB 1 reasonably advance those interests. Plaintiffs err by contending—without citing a single election case—that Alabama bears a high evidentiary burden to substantiate that SB 1 advances these interests. *See* PI Mot. at 21. No "elaborate, empirical verification of the weightiness of the State's asserted justification" for election regulations is required, and Alabama's law easily passes muster under the relevant precedent. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997).

**ARGUMENT**

I.  **Federal courts have rejected Plaintiffs' effort to characterize the conduct of facilitating absentee voting as First Amendment–protected speech.**

SB 1 prohibits third parties from engaging in certain conduct related to absentee ballot applications, such as prefilling another voter's application, submitting their application, or paying other people to do the same. Plaintiffs believe the law is ill-advised because it will negatively "impact[] voters who require … assistance" in order to vote absentee. PI Mot. at 6. Alabama's Legislature and Governor believe the law helps prevent third parties from exercising undue influence over Alabama's absentee voters. *See, e.g.*, Ala. Office of the Governor, "Governor Ivey Signs Senate Bill 1" (Mar. 20, 2024), perma.cc/6CGC-BK47.

Plaintiffs' effort to transform their disagreement about the wisdom of Alabama's law into a First Amendment question is a nonstarter. Beginning with Plaintiffs' expressive-conduct argument, the Supreme Court has long rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). Rather, the First Amendment protects only activity that is "inherently expressive." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.* (*FAIR*), 547 U.S. 47, 64 (2006). Conduct is "inherently expressive" when the expressive actor "inten[ds] to convey a particularized message" and "the likelihood [is] great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). To satisfy that standard, expressive conduct must be "sufficiently imbued with elements of communication." *Id.* at 406. For example: wearing coordinated black armbands to protest a war, *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969); wearing military uniforms for a dramatic presentation, *Schacht v. United States*, 398 U.S. 58 (1970); or publicly burning an American flag at a presidential inauguration, *Johnson*, 491 U.S. at 404.

Prefilling another person's absentee ballot application, submitting their application, or paying another person to do so are activities far removed from the "inherently expressive" conduct protected by the First Amendment. *Id.* As an initial matter, protected expressive conduct must involve "a particularized message" likely to "be understood by those who viewed it," but Plaintiffs' conduct carries no such message. *Id.* Plaintiffs argue that "a reasonable person would interpret Plaintiffs' absentee assistance activities as conveying some message" because "Plaintiffs' absentee assistance is intertwined with direct communication about the importance and accessibility of voting." PI Mot. at 17. "It is possible to find some kernel of expression in almost every activity a person undertakes." *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). Yet "such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *Id.* The question is thus whether "the likelihood [is] *great*" that observers would infer "a *particularized* message" from Plaintiffs' conduct. *Johnson*, 491 U.S. at 404 (emphasis added). And although a "particularized message" doesn't "necessarily" mean "a specific message," it still requires at least "a great likelihood that the expressive conduct will be understood by those who view it." *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1337 (11th Cir. 2021) (citations omitted).

Plaintiffs do not come close to meeting this standard. Some observers could conceivably intuit Plaintiffs' intended pro-voting message: "that voting is important and accessible, and that every eligible voter should exercise their right to vote regardless of senior citizen status, disability, or incarceration." PI Mot. at 17. But many will hear other, very different messages, such as: "We think you are incapable of filling out simple forms," or "You need a sophisticated organization to guide you because absentee voting is not 'accessible,'" or "We think you will vote for our favored candidates so we are targeting you." And some will infer no message at all.

Consistent with this analysis, court after court around the country has rejected similar attempts to characterize third parties' efforts to encourage or facilitate voting as expressive conduct.

6

*See, e.g.*, *VoteAmerica v. Raffensperger*, 609 F. Supp. 3d 1341, 1357-58 (N.D. Ga. 2022) ("Plaintiffs have not shown that the act of sending ballot application packages is expressive conduct subject to First Amendment protections."); *New Ga. Proj. v. Raffensperger*, 484 F. Supp. 3d 1265, 1300 (N.D. Ga. 2020) ("[C]ollecting ballots does not qualify as expressive conduct."); *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (rejecting that "the conduct of collecting ballots would reasonably be understood by viewers as conveying … a symbolic message of any sort"); *Voting for Am. v. Steen*, 732 F.3d 382, 392 (5th Cir. 2013) (finding "nothing 'inherently expressive' about receiving a person's completed application and being charged with getting that application to the proper place"); *Voting for Am. v. Andrade*, 488 F. App'x 890, 898 (5th Cir. 2012) (same); *Feldman*, 840 F.3d at 1084 ("[A] viewer would reasonably understand ballot collection to be a means of facilitating voting, not a means of communicating a message."); *League of Women Voters of Fla. v. Browning*, 575 F. Supp. 2d 1298, 1319 (S.D. Fla. 2008) (agreeing that "the collection and handling of voter registration applications is not inherently expressive activity"); *DCCC v. Ziriax*, 487 F. Supp. 3d 1207, 1234-35 (N.D. Okla. 2020) ("[C]ompleting a ballot request for another voter, and collecting and returning ballots of another voter, do not communicate any particular message…."); *Lichtenstein v. Hargett*, 489 F. Supp. 3d 742, 769 (M.D. Tenn. 2020) (noting "receipt and delivery of completed voter registration forms is not inherently expressive conduct" and finding "not a single case … in which the act of distributing absentee-ballot applications was treated as within the scope of the First Amendment").

The Eleventh Circuit recently confirmed that laws like SB 1 do not prohibit any protected expressive conduct. In *Burns v. Town of Palm Beach*, the Eleventh Circuit distilled "five contextual factors" to guide the inquiry whether observers would likely infer a message from purportedly expressive conduct: (1) whether the conduct involves public displays; (2) whether the activity is open to everyone; (3) whether the activity takes place in a traditional public forum; (4) whether

7

the activity addressed an issue of public concern; and (5) whether the activity "has been understood to convey a message over the millennia." 999 F.3d 1317, 1343-45 (11th Cir. 2021). Plaintiffs barely discuss these factors, but each indicates that their activities are not inherently expressive.

*First*, Plaintiffs have no evidence of "public display[s]." *Id.* at 1338. Cases recognizing inherently expressive activity invariably involve open, public displays. *See Tinker*, 393 U.S. at 504 (publicly displaying a black armband to school during the Vietnam War); *Spence v. Washington*, 418 U.S. 405, 410 (1974) (publicly displaying an American flag with a peace symbol taped over it by hanging it upside down out of an apartment); *Johnson*, 491 U.S. at 404 (publicly burning an American flag); *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1240 (11th Cir. 2018) (publicly sharing food). But Plaintiffs target "individuals" who they say require "assistance" to vote. PI Mot. at 7. At most, that conduct is like "sharing a meal with friends," and thus not inherently expressive. *Burns*, 999 F.3d at 1343.

*Second*, Plaintiffs' activities are not "open to everyone." *Id.* The purpose of an open event is to grab the attention of passersby. The food-sharing event in *Food Not Bombs*, for example, had "social implications" that encouraged participation by those who engaged with the activity. 901 F.3d at 1242. In contrast, Plaintiffs target their activities at individuals in preferred demographics. *See* PI Mot. at 6-12. And activity that is "shielded … from public view," that is not "open to everyone," or that is not a general invitation to "the public" would not be understood by a reasonable person as conveying a message. *Burns*, 999 F.3d at 1344.

*Third*, that *some* of Plaintiffs' activities *might* take place in a traditional public forum does not mean SB 1 facially applies only to expressive activities. "Although the choice of location alone is not dispositive, it is nevertheless an important factor in the 'factual context and environment' that [courts] must consider." *Food Not Bombs*, 901 F.3d at 1242. Plaintiffs don't develop what proportion of their activities take place in parks or on sidewalks. *See, e.g.*, Doc. 34-3 at 3-4. And

8

some of their activities involve indisputably private forums. *E.g.*, Doc. 3403 at 6 ("GBM also has a hotline where people make calls to inquire about voter assistance and eligibility.").

**Fourth**, Plaintiffs address their activities to private concerns, not public ones. Plaintiffs define their concerns at a high level: "the right to vote." PI Mot. at 18. But the Eleventh Circuit is more precise. In *Food Not Bombs*, "the record demonstrate[d] without dispute that the treatment of the City's homeless population [was] an issue of concern in the community." 901 F.3d at 1242. That evidence consisted of city meetings, public workshops, and "local discussion regarding the City's treatment of the homeless." *Id.* at 1242-43. In contrast, building residential homes is a commonplace, "uncontroversial" activity that was a matter of private concern, not "public concern." *Burns*, 999 F.3d at 1344. That Plaintiffs are *privately* concerned about a *public* process does not transform their activities into matters of public concern.

**Fifth**, Plaintiffs' voter-assistance activities have not "been understood to convey a message over the millennia." *Id.* at 1344-45. Again, courts require more specificity than Plaintiffs provide. In *Burns*, the plaintiff's extensive evidence that architecture had a history of expressive design was insufficient. The Eleventh Circuit required the plaintiff to show that "*residential* architecture, specifically, has a historical association with communicative elements that would put a reasonable observer on notice of a message." *Id.* at 1345. Absent a lengthy history that "a particular symbol or type of conduct" has been used as a "means for conveying [a] message," this factor weighs against finding that the activity is inherently expressive. *Food Not Bombs*, 901 F.3d at 1243.

Plaintiffs argue that their "voter assistance and education events" involve public displays open to everyone that sometimes take place in public forums. PI Mot. at 17-18. But that contention misses the point—SB 1 does not prohibit "voter assistance and education events" or any of Plaintiffs' public advocacy and education efforts. The conduct SB 1 actually prohibits—prefilling an individual voter's absentee ballot application, returning such an application, or paying others to do

9

so—is quintessential private conduct. It is a bilateral undertaking between two individuals. That Plaintiffs' members may wish to perform that conduct in a public forum or during group events does not transform the conduct into First Amendment–protected expressive activity. *See, e.g.*, *Burns*, 999 F.3d at 1343-44 (evaluating expressiveness of the specific conduct prohibited by statute); *Food Not Bombs*, 901 F.3d at 1241 (same). After all, "[i]f combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it." *FAIR*, 547 U.S. at 66.

Perhaps recognizing that their expressive-conduct claim is foreclosed by a wall of precedent, Plaintiffs shoot for the moon and attempt to characterize prefilling and returning absentee ballot applications as "core political speech." PI Mot. 15-16. This theory is as illogical as it is unprecedented. Plaintiffs argue that the voter-assistance activities prohibited by SB 1 are core political speech because "[i]t would be impossible for Plaintiffs to assist voters with their applications without disclosing and disseminating information," and disseminating information about voting can be protected political speech. *Id.* at 16. But Plaintiffs do not argue that it would be impossible for them for speak about voting without violating SB 1 (a contention that would be plainly wrong given the narrowness of the law's specific prohibitions). Instead, they argue that it would be impossible for them to violate SB 1 (*i.e.*, "assist voters with their applications") without speaking about voting. This is exactly backwards: The fact that prohibited conduct may be accompanied by political speech does not make the underlying prohibition on conduct unconstitutional. *E.g.*, *Rumsfeld*, 547 U.S. at 66. Complying with SB 1's narrow prohibitions on conduct leaves Plaintiffs free to "[e]ncourage others to vote or engage in the political process." *VoteAmerica v. Raffensperger*, No. 1:21-cv-1390, 2023 WL 6296928, at *9 (N.D. Ga. Sept. 27, 2023).

Finally, Plaintiffs' cursory argument that SB 1 violates their associational rights, *see* PI Mot. at 18-19, is even further afield. SB 1 comes nowhere close to regulating Plaintiffs' "group[]

10

membership decisions," "requir[ing] disclosure of membership lists," "impos[ing] penalties or withhold[ing] benefits based on membership in a disfavored group," or otherwise penalizing Plaintiffs' members for associating together or engaging in group advocacy. *Rumsfeld*, 547 U.S. at 69. Plaintiffs cannot succeed by relabeling their freedom-of-speech arguments as freedom-of-association arguments; they must show that Alabama has somehow targeted the fact of their association itself. Plaintiffs do not even attempt to make such a showing.

    **II.**    **Federalism requires respect for the State's interests in regulating elections.**

The power to regulate elections is left first to the States, then to Congress. The Constitution provides that the "Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. Const. art. I, §4. Likewise, "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors" to choose the President of the United States. U.S. Const. art. II, §1. Regulation of state elections, of course, is left entirely to the States. U.S. Const. amend. X.

Given this constitutional structure, federal courts should be especially careful when it comes to weighing States' interests in elections. "[T]he States 'have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised.'" *Evans v. Cornman*, 398 U.S. 419, 422 (1970); *see also Eu v. S.F. Cnty. Democratic Central Comm.*, 489 U.S. 214, 231 (1989) ("A State indisputably has a compelling interest in preserving the integrity of its election process.").

Here, Alabama's elected representatives passed SB 1 to improve election security, minimize voter confusion and deception, and lessen undue influence from third parties on absentee voters, among other goals. *E.g.*, Ala. Office of the Governor, *supra*. These are "weighty reasons that warrant judicial respect." *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28,

11

34 (2020) (Kavanaugh, J., concurral); *see, e.g.*, *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 81 F.4th 1328, 1332 (11th Cir. 2023) (en banc) (per curiam) (recognizing "election security" as legitimate interest supporting election regulation); *Timmons*, 520 U.S. at 364 (recognizing States' "'compelling' interests in avoiding voter confusion"); *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1219 (11th Cir. 2009) (recognizing State's "compelling interests" in "protecting voters from … undue influence").

SB 1 reasonably advances Alabama's interests in election security and minimizing voter confusion and undue influence. As multiple courts have found, the prohibition on "[p]refilling" absentee ballot applications is a "reasonable and nondiscriminatory method[] of achieving the state's goals" in "avoiding voter confusion and administering effective elections." *VoteAmerica*, 609 F. Supp. 3d at 1363; *see also Lichtenstein v. Hargett*, 489 F. Supp. 3d 742, 783 (M.D. Tenn. 2020) (accepting State's argument that it "helps prevent voter fraud and confusion and preserves the integrity of the ballot box" to ensure "that the application is not pre-filled in any way by non-election officials"); *League of United Latin Am. Citizens of Iowa v. Pate*, 950 N.W.2d 204, 210 (Iowa 2020) (affirming "the concept that the voter should fill out the absentee ballot application correctly as a means of assuring the application comes from the voter"). The requirement that the voter return the application and the prohibition on third-party payments are similarly tailored to "assuring the application comes from the voter" without undue influence. *Pate*, 950 N.W.2d at 210; *see also VoteAmerica*, 609 F. Supp. 3d at 1363 (finding law "especially" reasonable where, as here, the State "elected not to impose an outright ban on third-parties' distribution of absentee ballot applications and instead chose to regulate only the specific parts of the process that are problematic").

Plaintiffs argue that SB 1 must be enjoined because Alabama has not satisfied its "burden of proving, through evidence" that the law sufficiently advances these goals. PI Mot. at 21.

12

Plaintiffs cite only one case for the proposition that Alabama bears such a burden. *See id.* (citing *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994)). But that case is about federal cable broadcast regulation, which has nothing to do with state election laws. Plaintiffs rely on inapplicable cases because election-law precedent uniformly undercuts their position that the State must carry a substantial evidentiary burden to sustain its election regulations.

"It is well established that, in the election context, there is no need for an 'elaborate, empirical verification of the weightiness of the State's asserted justifications.'" *Fla. State Conf. of NAACP v. Browning*, 569 F. Supp. 2d 1237, 1251 (N.D. Fla. 2008) (quoting *Timmons*, 520 U.S. at 364). That is because "Legislatures should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights." *Timmons*, 520 U.S. at 364 (cleaned up). "To require States to prove actual voter confusion … would invariably lead to endless court battles over the sufficiency of the 'evidence' marshaled by a State to prove the predicate," and the same is true for states' concerns about election security and undue influence. *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986). Thus, for example, in *Crawford v. Marion County Election Board*, the Supreme Court upheld a voter identification law even though the record contained "no evidence of any [in-person] fraud actually occurring in Indiana at any time in its history." 553 U.S. 181, 194 (2008). The Court should reject Plaintiffs' effort to demand more evidence than the law requires to support Alabama's reasonable election regulations.

## CONCLUSION

The Court should deny the motion for preliminary injunction.

Respectfully submitted this the 7th day of June 2024.

/s/ *Thomas L. Oliver III*
Thomas L. Oliver III (OLI025)
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
T: (205) 521-8000
toliver@bradley.com

Thomas R. McCarthy*
Conor D. Woodfin*
Seanhenry VanDyke*†
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
T: (703) 243-9423
tom@consovoymccarthy.com
conor@consovoymccarthy.com
seanhenry@consovoymccarthy.com

\* *pro hac vice admission to be filed*
† barred in Texas; supervised by principals of the firm who are members of the Virginia bar

*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 7th day of June 2024, I electronically filed the foregoing using the ECF System, which will send notification to everyone requiring service.

                                                 */s/ Thomas L. Oliver III*
                                                 OF COUNSEL