IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALABAMA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> STEVE MARSHALL, in his official capacity as Alabama Attorney General, *et al.*, <br><br> *Defendants*. | Civil Action No. 2:24-cv-420-RDP <br> Chief Judge R. David Proctor |

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA REGARDING SECTION 208 OF THE VOTING RIGHTS ACT**

**TABLE OF CONTENTS**

INTEREST OF THE UNITED STATES ................................................................................................ 1

INTRODUCTION ................................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................................ 2

STATUTORY BACKGROUND ........................................................................................................... 3

ARGUMENT ......................................................................................................................................... 3

    I.    Section 208 of the Voting Rights Act Guarantees a Voter's Choice of Assistor Subject Only to the Limitations Enumerated by Congress. ........................................................... 3

        A.    Section 208's limited exceptions are exclusive. ............................................................ 3

        B.    States may not restrict Section 208's guarantees while purporting to further those guarantees. ..................................................................................................................... 6

    II.    Section 208 of the Voting Rights Act Preempts State Laws That Interfere with Its Voting Assistance Guarantee, Including Those Targeting Assistors. ............................... 7

CONCLUSION ...................................................................................................................................... 9

## INTEREST OF THE UNITED STATES

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States." This case presents important questions regarding the interpretation of Section 208 of the Voting Rights Act, 52 U.S.C. § 10508. Congress has vested the Attorney General with authority to enforce Section 208 of the Voting Rights Act on behalf of the United States. 52 U.S.C. §§ 10307(a), 10308(d). Accordingly, the United States has a substantial interest in ensuring the proper interpretation of Section 208. The United States takes no position on any factual disputes or any other legal questions in this case.

## INTRODUCTION

Section 208 of the Voting Rights Act provides that voters with disabilities or inability to read or write are entitled to voting assistance from "a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. The Supremacy Clause of the U.S. Constitution requires preemption of any state statute that, when enacted, makes compliance with both federal and state law impossible or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting Section 208. *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (internal citations omitted). Limitations on voters' choice of assistors beyond the two exceptions provided by federal law and secondary requirements on assistors raise preemption concerns.

Plaintiffs allege that Alabama Senate Bill 1 (SB 1) violates Section 208's federal voting assistance guarantee by imposing impermissible burdens on assistors and limiting covered voters' choice of assistors. *See* Compl. ¶ 166, ECF No. 1. Defendants counter that SB 1 incorporates verbatim Section 208's rights and thus does not criminalize any voting assistance

1

that is both required by reason of a voter's disability and provided by someone of that voter's choice. *See* Defs.' Mot. Dismiss at 41-43, ECF No. 42. Defendants also contend that Section 208 permits state-law restrictions on who may serve as an assistor beyond the limitations provided in federal law and therefore does not preempt SB 1. *Id.* at 43-44. Defendants are wrong that federal law permits restrictions beyond those provided in Section 208. Accordingly, this Court should either read SB 1 as limited by Section 208, or find that, to the extent that SB 1 conflicts with Section 208, SB 1 is preempted.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 20, 2024, Governor Kay Ivey signed SB1 into law. *See* Ala. Code § 17-11-4, as amended March 20, 2024 (Act No. 2024-33). Plaintiffs filed suit challenging various provisions of SB 1, including provisions that criminalize (1) distributing prefilled absentee ballot applications, *id.* § 17-11-4(b)(2); (2) submitting absentee ballot applications that are not one's own, unless the applicant is seeking emergency medical treatment within five days before an election, *id.* § 17-11-4(c)(2); and (3) knowingly paying or receiving a payment or a gift to "distribute, order, request, collect, prefill, complete, obtain, or deliver a voter's absentee ballot application," *id.* §§ 17-11-4(d)(1), (d)(2). Compl. ¶ 2, ECF No. 1. Relevant here, Plaintiffs allege that those SB 1 provisions violate Section 208 of the Voting Rights Act by prohibiting voters with disabilities or inability to read or write from receiving assistance from an individual of their choice when completing, submitting, or mailing their absentee ballot application. Plaintiffs also allege that the law imposes criminal liability on organizations that seek to assist voters covered by Section 208. Compl. ¶¶ 107-114, ECF No. 1. On May 3, 2024, Plaintiffs moved for a preliminary injunction. ECF No. 34. On May 20, 2024, Defendants moved to dismiss the case. ECF No. 42.

**STATUTORY BACKGROUND**

Section 208 of the Voting Rights Act states that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. The Act defines the terms "vote" and "voting" broadly to encompass "all action necessary to make a vote effective." *Id.* § 10310(c)(1). This includes, but is not limited to, any "action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast." *Id.*

Section 208 was enacted in 1982 because Congress found that "[c]ertain discrete groups of citizens are unable to exercise their rights to vote without obtaining assistance in voting." S. Rep. No. 417, 97th Cong., 2d Sess. 62 (1982) (Senate Report). This need for assistance created two potential problems. First, some individuals with disabilities chose not to vote rather than rely on someone whom they did not choose to help them vote. *Id.* Second, these voters were "more susceptible than the ordinary voter to having their vote unduly influenced or manipulated." *Id.* To address these challenges, Congress decided that these voters "must be permitted to have the assistance of a person of their own choice," with the only exceptions being agents of the voter's employer or union. *Id.* at 62, 64. This solution was "the only way to assure meaningful voting assistance and to avoid possible intimidation or manipulation of the voter." *Id.* at 62.

**ARGUMENT**

**I.     Section 208 of the Voting Rights Act Guarantees a Voter's Choice of Assistor Subject Only to the Limitations Enumerated by Congress.**

    **A.     Section 208's limited exceptions are exclusive.**

3

Section 208's expansive right to assistance contains only two exceptions: persons with disabilities or inability to read or write needing help to vote cannot receive assistance from someone affiliated with (1) their employer or (2) their union. *See* 52 U.S.C. § 10508. Defendants posit that the inclusion of Section 208's text in Ala. Code § 17-11-4(e) constitutes "the Legislature's express adoption of federal law," and that this provision of SB1 "exempts from criminal liability voting assistance that is both required by reason of a voter's disability and provided by someone of that voter's choice." Defs.' Mot. at 42, 43 n.22, ECF No. 42. To the extent that the Court agrees with this reading, then there is no conflict, as SB1 would impose no additional restrictions on Section 208's protections.

But Defendants go further. They argue that Congress's use of an indefinite article in Section 208—guaranteeing voters "assistance by *a* person of the voter's choice"— and its enumerated exceptions permit Alabama to impose additional restrictions on Section 208's right to assistance. Defs.' Mot. at 43, ECF No. 42. Not so.

First, an indefinite article, by its very definition, "[i]ndicat[es] indefiniteness" and can reasonably mean "one, some, any" member of the identified class. Oxford Eng. Dictionary (3rd ed. 2008, modified version published online 2023). Contemporary dictionaries also recognized both usages. *See Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 971 F.3d 340, 354-55 (D.C. Cir. 2020) ("'A' means 'one' or 'any' . . . [but] is more often used in the sense of 'any.'" (citing *A*, Black's Law Dictionary (5th ed. 1979))). And, consistent with both the definition of "a" and its common usage, courts routinely find that "a" serves as a synonym for "any." *See, e.g.*, *United States v. Alabama*, 778 F.3d 926, 932 (11th Cir. 2015) ("The plain meaning of the term 'an election' is 'any election.'") (quoting 52 U.S.C. § 20302(a)(8)(A));

4

*United States v. Naranjo*, 259 F.3d 379, 382 (5th Cir. 2001) ("'Such *a* violation' . . . refers to . . . *any* violation").

Defendants' reading also overlooks Section 208's weightiest command: an assistor must reflect "the voter's choice." 52 U.S.C. § 10508. Nothing in Section 208's plain language, including the article used to modify the word "person," permits states to impose exceptions to Section 208 that Congress neither contemplated nor approved, and states may not substitute their judgment for Congress's. Nor may they limit or override a voter's choice of assistor so long as the chosen assistor is not an employer or union representative or an agent thereof. *See id.* Section 208's use of "a" to modify "person" does not obviate Section 208's essential guarantee, nor is it evidence of an "intent by Congress to allow states to restrict a federally created right, for Congress does not 'hide elephants in mouseholes.'" *Disability Rts. N.C. v. N.C. State Bd. of Elections*, 602 F. Supp. 3d 872, 878 (E.D.N.C. 2022) (quoting *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001)).

Second, Defendants place the wrong significance on Section 208's enumerated exceptions in arguing that its exclusions of unions and employers also show "that Congress did not intend to give the voter boundless options." Defs.' Mot. at 43, ECF No. 42. The presence of two discrete exceptions means the opposite: a state may not impose more restrictions on voter assistance in addition to those enumerated exceptions, because "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Hillman v. Maretta*, 569 U.S. 483, 496 (2013) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980)) (alterations in original); *see also McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1090 (11th Cir. 2017). No contrary intent exists here. Quite the opposite—Congress

5

knew that voters with disabilities faced higher risks of exploitation, yet it designed Section 208 without giving States leeway to further regulate who could assist these voters. The Senate Judiciary Committee's Report confirms Congress's intent that covered voters must be allowed assistance "from a person of their own choosing, with two exceptions" only. S. Rep. No. 97-417, at 2.

Finally, Defendants' textual analysis principally relies on a single outlier case from outside this district and this circuit, *Priorities USA v. Nessel*, 628 F. Supp. 3d 716 (E.D. Mich. 2022), that cannot be reconciled with Section 208's text and plainly contradicts controlling Eleventh Circuit precedent on examining Congress's word choice. *See Alabama*, 778 F.3d at 933 ("We have repeatedly found . . . that the context of a statute required us to read 'a' or 'an' to mean 'any' rather than 'one.'") (collecting cases). *Nessel* flouts the settled canon that enumerated statutory exceptions are presumed to be exclusive and overlooks the importance of voter choice as Congress's chosen remedy. *Compare Nessel*, 628 F. Supp. 3d at 732-33 (relying on dictionary definition of "a" to interpret Section 208), *with Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1481 (2021) (explaining that courts must look at the statutory context to determine the meaning of "a"). The United States has found no case relying on *Nessel*'s flawed analysis, and, as explained in the next section, other courts have consistently rejected States' attempts to narrow Section 208's protections. This Court should refrain from adopting it here.

**B.      States may not restrict Section 208's guarantees while purporting to further those guarantees.**

Defendants also argue that Section 208 allows states to restrict voters' choice of assistors to "limit the influence of paid operatives." Defs.' Mot. at 44, ECF No. 42. Defendants note that "by excluding unions and employers, Congress recognized that certain people might unduly influence a disabled voter's choice." *Id.* That is true. But Defendants ignore Congress's chosen

6

remedy for that concern: a guarantee that voters may choose their assistor. As the Senate Report explains:

> To limit the risks of discrimination against voters in these specified groups and avoid denial or infringement of their right to vote, the Committee has concluded that they must be permitted to have the assistance of a person of their own choice. The Committee concluded that this is the only way to assure meaningful voting assistance and to avoid possible intimidation or manipulation of the voter. To do otherwise would deny these voters the same opportunity to vote enjoyed by all citizens.

S. Rep. No. 97-417, at 62.

Congress's concern for voters cannot serve as the basis for gutting the very means Congress chose to address that issue. Alabama may not substitute its judgment for that of Congress or rewrite Section 208. *See Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 164 (2016) (explaining that "[s]tates may not seek to achieve ends, however legitimate, through . . . means that intrude on" federal power). There is thus no room for a state's "reasonabl[e] determin[ation]" of who "might exert undue influence" on voters covered by Section 208 beyond Congress's enumerated exceptions. Defs.' Mot. at 35, ECF No. 42. In this context, "Congress contemplated the vulnerability of disabled voters when it discussed providing unrestricted choice of assistants and provided two explicitly excluded groups. States are not permitted to limit the right to assistance further." *Disability Rts. N.C. v. N.C. State Bd. of Elections*, No. 5:21-CV-361, 2022 WL 2678884, at *5 (E.D.N.C. July 11, 2022).

## II. Section 208 of the Voting Rights Act Preempts State Laws That Interfere with Its Voting Assistance Guarantee, Including Those Targeting Assistors.

"[S]tate law is naturally preempted to the extent of any conflict with a federal statute." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Conflict preemption exists when "'compliance with both state and federal law is impossible,' or where 'the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

7

Congress.'" *Oneok*, 575 U.S. at 377 (citing *California v. ARC America Corp.*, 490 U.S. 93, 100-101 (1989)); *see also Carey v. Wisconsin Elections Comm'n*, 624 F. Supp. 3d 1020, 1032 (W.D. Wis. 2022) (citations omitted). Congressional intent "is the 'ultimate touchstone'" when determining whether a federal law preempts a state one. *Gallardo by & through Vassallo v. Dudek*, 963 F.3d 1167, 1175 (11th Cir. 2020) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).

Congress enacted Section 208 to provide "unfettered access" to the polls for voters covered by Section 208's guarantees. *Disability Rts. Miss. v. Fitch*, 684 F. Supp. 3d 517, 518 (S.D. Miss. 2023). To accomplish this goal, Congress concluded that these specified voters must be allowed to receive assistance from a person of their choosing. S. Rep. 97-417, at 62. Congress found that this broad protection is "the only way to assure meaningful voting assistance" because "many such voters may feel apprehensive about casting a ballot in the presence of, or may be misled by, someone other than a person of their own choice." *Id.*

Laws regulating voter assistance obstruct Congress's objectives in enacting Section 208, and several courts have found state laws going beyond Section 208's restrictions to be impermissible limitations on voter assistance. *See, e.g.*, *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614-15 (5th Cir. 2017) (concluding that a limitation on assistance "beyond the ballot box"—even with "near-unfettered choice of assistance *inside the ballot box*"—"impermissibly narrows the right guaranteed by Section 208" (emphasis in original)); *see also* 52 U.S.C. § 10310(c)(1) (defining "vote" and "voting" under the Act as "all action necessary to make a vote effective"); *Carey*, 624 F. Supp. 3d at 1032 (enjoining restriction on absentee ballot return assistance); *OCA-Greater Hous. v. Texas*, No. 1:15-CV-679, 2022 WL 2019295, at *3 (W.D. Tex. June 6, 2022) (modifying injunction to enjoin new state law "limiting the activities eligible for assistance to

8

'marking or reading the ballot'" (citation omitted)). Determining whether a state law is preempted by federal law is "a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby*, 530 U.S. at 373. Taken as a whole, and given its purpose and intended effects, Section 208 preempts SB1 to the extent that the state law prevents voters with disabilities or inability to read or write from receiving assistance from an individual of their choice when completing, submitting, or mailing their absentee ballot application.

## CONCLUSION

The United States respectfully submits this Statement of Interest to assist the Court in evaluating Plaintiffs' claim under Section 208 of the Voting Rights Act.

Dated: June 10, 2024

| | |
|---|---|
| PRIM F. ESCALONA<br>United States Attorney | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| */s/ Carla C. Ward*<br>CARLA C. WARD<br>Assistant United States Attorney<br>Northern District of Alabama<br>United States Attorney's Office<br>1801 Fourth Avenue North<br>Birmingham, AL 35203<br>(205) 244-2181<br>carla.ward@usdoj.gov | */s/ Kelli M. Slater*<br>R. TAMAR HAGLER<br>RICHARD A. DELLHEIM<br>JENNIFER J. YUN<br>KELLI M. SLATER<br>Attorneys, Voting Section<br>Civil Rights Division<br>United States Department of Justice<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530<br>(800) 253-3931<br>tamar.hagler@usdoj.gov<br>richard.dellheim@usdoj.gov<br>jennifer.yun@usdoj.gov<br>kelli.slater@usdoj.gov |

## CERTIFICATE OF SERVICE

      I hereby certify that, on June 10, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and caused to be served by email a copy of this filing to counsel of record.

      */s/ Kelli M. Slater*
KELLI M. SLATER
Voting Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(800) 253-3931
kelli.slater@usdoj.gov