**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ALABAMA STATE CONFERENCE OF THE NAACP, et al.,** | } } } | |
| **Plaintiffs,** | } } | |
| **v.** | } } | **Case No.:  2:24-cv-00420-RDP** |
| **STEVE MARSHALL, in his official capacity as Alabama Attorney General,** | } } } } | |
| **Defendant.** | } } | |

**MEMORANDUM OPINION AND ORDER ENJOINING IN LIMITED PART**
**ENFORCEMENT OF ALABAMA SENATE BILL 1 (2024)**

This matter is before the court on Plaintiffs' Motion for Preliminary Injunction. (Doc. # 34). The Motion has been fully briefed. (Docs. # 45, 46, 49, 57). For the reasons discussed below, the Motion is due to be granted in part and denied in part.

**I.     Background**

On March 20, 2024, the Alabama Legislature enacted Alabama Senate Bill 1 ("SB 1") relating to absentee ballot applications. (Doc. # 1 ¶ 1 & n.1). SB 1 places certain restrictions on the manner in which absentee ballot application assistance may be provided. On April 4, 2024, Plaintiffs filed this action challenging four provisions of SB 1 under various legal theories. (Doc. # 1). On May 20, 2024, Defendant moved to dismiss Plaintiffs' Complaint. (Doc. # 42). After careful review of the relevant briefing and oral argument, on August 21, 2024, the court granted Defendant's Motion to Dismiss in part and denied it in part. (Docs. # 69, # 70).

In ruling on the Motion to Dismiss, the court held that the only proper Defendant in this case is Alabama Attorney General Steve Marshall. (Docs. # 69 at 17-20, # 70). As to the claims

against Defendant Marshall, the court concluded that only a portion of one of Plaintiffs' claims is actionable. (Doc. # 69 at 64). More specifically, the court determined that Plaintiffs could proceed on the portion of Count Five of their Complaint asserting that the Submission Restriction and the Payment and Gift Provisions of SB 1 conflict with and are preempted by Section 208 of the Voting Rights Act ("VRA"). (*Id*. at 49-60, 64).

Section 208 provides that: "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. On their Section 208 claim, and in their Motion for Preliminary Injunction, Plaintiffs asked the court to impose the following preliminary injunctive relief:

> (1) enjoin Defendant from implementing or enforcing the Challenged Provisions of SB 1; and

> (2) enjoin Defendant from issuing any instructions or communications indicating that the Challenged Provisions prohibit any form of absentee application assistance, and order Defendant to issue corrective instructions stating that the Challenged Provisions have been preliminary enjoined and accordingly, that those provisions are not enforceable.

(Doc. # 34 at 2-3).

## II.     Standard of Review

Plaintiffs seek a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. A preliminary injunction is an extraordinary and drastic remedy. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). To obtain a preliminary injunction, Plaintiffs, as the movants, must establish: (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable injury in the absence of the proposed preliminary injunction; (3) the threatened injury to the movant exceeds

the damage that the preliminary injunction may cause the opposing party; and (4) the preliminary injunction would not disserve the public interest. *Swain v. Junior*, 961 F.3d 1276, 1284-85 (11th Cir. 2020). Ultimately, "a preliminary injunction [should not] be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (per curiam) (quoting *Robertson*, 147 F.3d at 1306).

A party's failure to establish any one of the essential elements will warrant denial of the request for preliminary injunctive relief and obviate the need to discuss the remaining elements. *See Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001) (citing *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994)). That is, "even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel*, 234 F.3d at 1176.

## III.    Analysis

The court's decision on Defendant's Motion to Dismiss has significantly narrowed the remaining issues presented in Plaintiffs' Motion for Preliminary Injunction. The only questions remaining are whether Plaintiffs are entitled to a preliminary injunction with respect to their claims that Section 208 preempts SB 1's Submission Restriction and its Payment and Gift Provisions, and whether the court should hold an evidentiary hearing before deciding this Motion. After careful examination, the court has concluded that Plaintiffs are entitled to a preliminary injunction on both of their remaining claims and that an evidentiary hearing before deciding this Motion is unnecessary.

### A.    Likelihood of Success on the Merits of the Underlying Case

"Preemption is a question of law." *MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1117 (9th Cir. 2020) (internal quotation omitted); *see also Michigan Consol. Gas Co. v. Panhandle E.*

*Pipe Line Co.*, 887 F.2d 1295, 1299 (6th Cir. 1989) (noting that issues of federal preemption are questions of law). And, the court has already noted that whether Section 208 preempts SB 1 is a pure legal issue (Doc. # 69 at 49) and questioned whether SB 1's Submission Restriction and Payment and Gift Provisions, on their face, are preempted by federal law because these provisions prohibit assistance that Section 208 of the VRA guarantees. (*See id.* at 49-60). The court previously concluded that the key language of Section 208, "a person of the voter's choice," is ambiguous. (Doc. # 69 at 50). In light of that ambiguity, the court looked to the legislative history of Section 208. That history indicates that Congress intended that state laws which "unduly burden the right recognized in [Section 208]" are preempted. (Doc. # 69 at 52-53) (quoting *Bond v. United States*, 572 U.S. 844, 858 (2014)). This remains a question of law.

In most cases, a court faced with a motion for a preliminary injunction must look at both the legal and factual bases for a claim and decide whether a plan is likely to succeed on the merits. In this case, however, because preemption is a question of law, the court need only look at the legal basis for the claim. The court easily concludes, after reviewing its language, that SB 1 unduly burdens the rights of Section 208 voters to make a choice about who may assist them in obtaining and returning an absentee ballot.

Other courts agree with this conclusion. In *Carey v. Wisconsin Elections Commission*, the court considered a Section 208 challenge to a Wisconsin statute prohibiting voters from obtaining assistance from a third party to return an absentee ballot. 624 F. Supp. 3d 1020 (W.D. Wis. 2022). The court reasoned that a prohibition on voters obtaining assistance in returning their absentee ballots conflicted with Section 208. *Id.* at 1032. As the court explained, "[t]he VRA gives plaintiffs the [] right to obtain third-party assistance in mailing or delivering an absentee ballot." *Id.* at 1033. The court concluded, therefore, that the VRA preempts the applicable Wisconsin statute "to the

extent it prohibits third-party ballot-return assistance to disabled voters who require such assistance." *Id.*

The court in *League of Women Voters of Ohio v. LaRose* similarly concluded that Section 208 preempted an Ohio statute providing that "[n]o person shall knowingly . . . [r]eturn the absent voter's ballot of another" unless they are an authorized relative, a U.S. postal worker, or a private carrier. 2024 WL 3495332, at *2, *15 (N.D. Ohio 2024). In so holding, the *LaRose* court emphasized that "Section 208 does not say . . . that disabled voters are limited to 'a person of the voter's choice *from a list to be determined by the several states*.'" *Id.* at *11 (emphasis in original); *see also Disability Rights N.C. v. N.C. State Bd. of Elections*, 602 F. Supp. 3d 872, 879 (E.D. N.C. 2022) (holding similarly); *Democracy N.C. v. N.C. State Bd. of Elections*, 590 F. Supp. 850, 872 (M.D. N.C. 2022) (holding similarly).

Therefore, for similar reasons as those discussed in the Order of Dismissal (Doc. # 69), the court holds that Plaintiffs are likely to succeed on the merits of their remaining claims.

**B.      Irreparable Harm**

Disabled, blind or illiterate voters may be unable to secure an absentee ballot, and therefore unable to vote, without obtaining the assistance of a person of their choice. This was the clear conclusion Congress reached in enacting the statutory provisions of Section 208. But, the language of SB 1's Submission Restriction and Payment and Gift Provisions purports to criminalize the act of giving Section 208 assistance to a voter.

The *Carey* court concluded that the plaintiffs in that case would suffer irreparable harm if the statutory provisions, which prohibited voters from having a third party return an absentee ballot, went into effect. *Id.* at 1034 ("[w]ithout the requested injunctions, plaintiffs risk losing their right to vote, which qualifies as an irreparable harm[.]"). Other courts in our Circuit have agreed

that when state action is taken that renders an individual unable to vote, that results in irreparable harm. "The denial of an opportunity to cast a vote that a person may otherwise be entitled to cast – even once – is an irreparable harm." *Gonzalez v. Kemp*, 470 F. Supp. 3d 1343, 1351 (N.D. Ga.), *aff'd sub nom. Gonzalez v. Governor of Georgia*, 978 F.3d 1266 (11th Cir. 2020) (quoting *Jones v Governor of Fla.*, 950 F.3d 795, 828 (11th Cir. 2020) (internal quotations omitted); *see also Wright v. Sumter Cnty. Bd. of Elections and Registration*, 361 F. Supp. 3d 1296, 1302 (M.D. Ga. 2018) ("[T]he loss of a meaningful right to vote creates an irreparable harm.")). Thus, if SB 1's Submission Restriction and Payment and Gift Provisions go into effect, disabled, blind, and illiterate members of the Plaintiff-organizations who wish to select someone from those organizations to provide Section 208 assistance will suffer irreparable harm. This is not a close call.

### C.     Balance of the Harm Imposed on the Parties and Public Interest

The court next considers whether the threatened injury to disabled, blind, and illiterate voters outweighs the potential harm that the requested relief would inflict on Defendant. The requested injunction will serve to ensure certain disabled, blind, and illiterate voters are not disenfranchised. *See Ga. Coal. for the People's Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251, 1267-68 (N.D. Ga. 2018) (finding that the non-hypothetical risk of disenfranchisement of voters indicated irreparable harm and that any administrative burden "is minimal compared to the potential loss of a right to vote altogether by a group of people"). This is a significant and irreparable harm.

Defendant argues that if the entirety of SB 1 is enjoined, the State will suffer "great harm" without these tools for ferreting out voter fraud and voter confusion. But, an injunction against only the Submission Restriction and Payment and Gift Provisions of SB 1, and one that is only

applicable to Section 208 voters, would still leave in place all of the tools designed to detect and prosecute fraud with respect to non-Section 208 voters. And, as related to Section 208 voters, nothing in this injunction would limit Alabama from investigating and addressing fraud in the procurement of absentee ballots. The impact of such a limited injunction would be minimal. "This [] is not a case in which preliminary relief would require the state to cancel or reschedule an election, discard ballots already cast, or prepare new ballots or other election materials." *Scott v. Roberts*, 612 F.3d 1279, 1296 (11th Cir. 2010) (citing *Nader v. Keith*, 385 F.3d 729 (7th Cir. 2004); *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914 (9th Cir. 2003) (en banc)). Issuance of the contemplated injunction would not require the Attorney General to do anything. Yet, this injunction permits disabled, blind, and illiterate voters to obtain necessary assistance in returning their absentee ballot applications, consistent with Section 208. *See Scott*, 612 F.3d at 1295-96. Further, it is clearly in the public's interest to ensure that every eligible voter may exercise that right. *See Georgia Coal. for People's Agenda*, 347 F. Supp. 3d at 1268. Thus, the balancing of these harms and the public interest weigh heavily in favor of enjoining the Submission Restriction and Payment and Gift Provisions of SB 1 as to assistance requested by Section 208 voters.

In their opposition to Plaintiffs' Motion for Preliminary Injunction, Defendant includes a request that "if the [c]ourt were to find that these Plaintiffs have proven their entitlement to a preliminary injunction, any such injunction should be no broader than necessary to provide only these Plaintiffs relief." (Doc. # 46 at 23). That is precisely what the court has done here.

### D.    Whether to Hold an Evidentiary Hearing

The parties submitted a Joint Status Report on September 10, 2024 to discuss their positions on the need, if any, for an evidentiary hearing. (Doc. # 72).

Defendant argues that a hearing on the motion is "necessary unless the Court were to deny Plaintiffs' motion." (*Id.* at 6). Defendant emphasizes that a preliminary injunction is an "extraordinary remedy never awarded as of right." (*Id.*) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008)). Defendant also quotes from the court's Order of Dismissal by highlighting that "whether a state provision 'unduly burdens' a voter's right to choose an assistor is 'a practical one dependent upon the facts.'" (*Id.*) (quoting Doc. # 69 at 56) (in turn quoting S. Rep. No. 97-417, at 63 (1982)). Finally, Defendant argues that an evidentiary hearing would allow presentation of evidence on the balance of the equities in a preliminary injunction analysis. (*Id.* at 7). Defendant has stated that this evidence would include testimony of the following witnesses: (1) Gregory Biggs, (2) Carla Woodall, (3) Jamie Scarbrough, and (4) Jeff Elrod. (*Id.* at 7-8).

According to Defendant's own evidentiary submissions, Biggs's testimony would be limited to an already-filed declaration discussing past absentee ballot fraud in Alabama. (Doc. # 72 at 8). Woodall would testify about instances of absentee ballot fraud and her observations of voters with disabilities in Houston County. (*Id.* at 7-8). Scarbrough would testify as to the same topics, except her testimony would be specific to Pike County. (*Id.* at 8). Elrod would describe absentee ballot figures by county as well as data on the use of the permanent disability roll in recent elections. (*Id.*). For purposes of this Order, the court assumes all of the facts in each declaration submitted by Defendant to be undisputed and that they would be established at a hearing. None of these undisputed facts would alter the court's determination that Plaintiffs are entitled to preliminary injunctive relief.

Plaintiffs oppose holding an evidentiary hearing, arguing that a hearing would "not present any relevant evidence and would needlessly expand the proceedings," and that Section 208

preemption "is a pure legal question." (*Id.*) (quoting Doc. # 69 at 49). Plaintiffs also argue that the time it would take to hold a hearing would "exacerbate the irreparable harm to Plaintiffs." (Doc. # 72 at 5). Plaintiffs filed "Rebuttal Declarations" that include affidavits from five individuals: (1) Louis G. Courie, (2) Terry Michael McKee, (3) Lauren Faraino, (4) Eric Peebles, and (5) Nicole Watkins. The declarations of Courie, McKee, Faraino, and Peebles describe how, as Alabama voters with disabilities, SB 1 deprives them of the assistors of their choice (their neighbor, mother, paid caregivers, or ADAP) because the assistors have received gifts or payment for doing so, or because of general fear of criminal liability under SB 1. (Docs. # 74-1 at 2-5, # 74-2 at 2-5, # 74-3 at 2-5, # 74-4 at 2-5). Watkins's declaration describes ADAP's voting assistance programs. (Doc. # 74-5 at 2-5). These fact submissions are not surprising. But, at the same time, they are unnecessary to the court's injunctive-relief determination. This is because common sense indicates that when Section 208 voters are deprived of their federal right to choose who they want to assist them in completing and submitting an absentee voter application, these very types of problems potentially will ensue.

"[T]he Federal Rules of Civil Procedure do not expressly require a hearing on every motion for injunctive relief." *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997); *see also All Care Nursing Service, Inc. v. Bethesda Memorial Hosp., Inc.*, 887 F.2d 1535, 1538 (11th Cir. 1989) (stating the same). This is because "[t]he extent to which a court is required to take oral testimony in a hearing on a motion for a preliminary injunction, and the extent to which it may rely upon affidavits reflect a tension between the need for speedy action and the desire for certainty and complete fairness." *All Care Nursing Service*, 887 F.2d at 1539 (citing *SEC v. Frank*, 388 F.2d 486, 490 (2d Cir. 1968)). The need for speedy action is particularly evident here, when a federal presidential election is a mere two months away.

The Eleventh Circuit has specified the limited circumstances when an evidentiary hearing is required before a decision on a motion for a preliminary injunction is reached. These circumstances include "where there is a presumption of irreparable harm, as in a Title VII employment discrimination case," *Kaimowitz*, 122 F.3d at 43, or "[w]here the injunction turns on the resolution of bitterly disputed facts, . . . [and] credibility issues." *All Care Nursing Service*, 887 F.2d at 1538 (citing *Forts v. Ward*, 566 F.2d 849, 851 (2d Cir. 1977)); s*ee also Williams v. Baldwin Cnty. Comm'n*, 203 F.R.D. 512, 515 (S.D. Ala. 2001) (finding it unnecessary to hold a hearing on an application for a preliminary injunction regarding whether Defendant violated the VRA because there was only an issue of law). In *All Care Nursing Service*, for example, the Eleventh Circuit determined that the district court abused its discretion in not holding an evidentiary hearing because the parties had submitted conflicting affidavits that "placed in serious dispute issues central to appellees' claims." *Id.* at 1539. Conversely, "where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998). When analyzing whether to hold an evidentiary hearing on a preliminary injunction motion, the court must therefore consider whether there are material facts in dispute. Below, the court examines whether there are material facts in dispute as to each prong of the preliminary injunction analysis.

Regarding the likelihood of success on the merits, as the court has already noted, "whether Section 208 of the VRA preempts [SB 1] is a pure legal question." (Doc. # 69 at 49). That was true in the context of a motion to dismiss, and it remains true in the context of a preliminary injunction motion. Defendant notes that the legislative history of Section 208 addresses the issue of whether state provisions "unduly burden" the Section 208 right as a "practical one dependent

upon the facts." (*Id.* at 52) (quoting S. Rep. No. 97-417, at 63 (1982)). But that statement is followed by an important elaboration: "Thus, for example, a procedure could not deny the assistance at some stages of the voting process during which assistance was needed, nor could it provide that a person could be denied assistance solely because he could read or write his own name." S. Rep. No. 97-417, at 63 (1982). Taken in proper context, the Senate Report's reference to the phrase "dependent upon the facts" relates to the question of what the challenged state law prohibits. By comparing the text of SB 1 with that of Section 208, the court can fully and properly analyze whether SB 1's procedure denies "assistance at some stages of the voting process during which assistance was needed." The court would also know, as part of this textual examination, whether SB 1 would deny "assistance solely because [a voter] could read or write his own name." The question of preemption thus remains a pure legal question.

Regarding irreparable harm, "[t]he denial of an opportunity to cast a vote that a person may otherwise be entitled to cast – even once – is an irreparable harm." *Gonzalez v. Kemp*, 470 F. Supp. 3d 1343, 1351 (N.D. Ga.), *aff'd sub nom. Gonzalez v. Governor of Georgia*, 978 F.3d 1266 (11th Cir. 2020) (quoting *Jones v Governor of Fla.*, 950 F.3d 795, 828 (11th Cir. 2020) (internal quotations omitted)). Evidentiary submissions are not necessary to show irreparable harm here, but even considering the evidentiary submissions before the court, none present a dispute of fact as to whether denying Section 208 voters the federal right they have to necessary assistance is an irreparable harm. For example, Plaintiffs' submissions illustrate how four Section 208 voters in Alabama would be deprived of the assistors of their choice due to the Payment and Gift Provisions of SB 1. (Docs. # 74-1 at 2-5, # 74-2 at 2-5, # 74-3 at 2-5, # 74-4 at 2-5). Again, this is exactly the type of circumstances that are obvious to anyone who considers the practical and legal effects of eliminating or limiting a Section 208 voter's choice. Indeed, these type of circumstances illustrate

the very harm that Section 208 envisions – that voters with disabilities are unable to vote because they are denied the assistance they need. Defendant's submissions establish that Absentee Election Managers have observed that Section 208 voters can vote with the assistance of unpaid people, including family, friends, and neighbors, as well as the Managers themselves. But, this does not raise a genuine dispute about the fact that there are some Section 208 voters who will nevertheless be denied the assistor of their choice due to SB 1's Payment and Gift Provisions, or who will be denied assistance in submitting their ballot under SB 1's Submission Provision.

Regarding the balance of the equities, the irreparable harm of not being able to obtain legally protected assistance is significant, and any harm inflicted on the public is insignificant given the limited scope of this preliminary injunction. Defendant presented evidentiary submissions on the presence of voter fraud in Alabama, and this is undisputed. (*See* Doc. # 74). And, again the proposition is as tautological as it is true: enjoining two narrow provisions of SB 1 only as they apply to Section 208 voters will not limit in any way Alabama's authority and ability to deal with voter fraud in Alabama. This injunction does not in any way prevent Alabama from prosecuting voter fraud when it occurs.

Defendant also presented affidavit evidence showing that some voters with disabilities can obtain assistance that is not prohibited by SB 1. But, this does not mean that *all* voters with disabilities will likewise be unharmed by SB 1. And, Defendant's position is squarely at odds with Section 208, which gives a covered potential voter the right to choose who will assist them, not merely the right to get help from someone who is able to help. In sum, Defendant has failed to

show how the "competing" evidence[1] is in such "serious dispute" that it requires an evidentiary hearing despite the looming election.

The bottom line is this: the parties have not shown there are any real disputes of fact, and certainly not any disputes of material fact. The court is able, without the aid of an evidentiary hearing, to compare Section 208 and SB 1 in terms of evaluating conflict preemption. Whether SB 1 is preempted is purely a question of law. No hearing is required for the court to conclude, as a matter of law, that Plaintiffs have a likelihood of success on the merits as to their claim that the Submission Restriction and Payment and Gift Provisions of SB 1 are preempted by Section 208 of the VRA.

## IV.    Conclusion

For all the foregoing reasons, the court concludes that Plaintiffs have established the requirements for the issuance of a preliminary injunction against the enforcement of SB 1's Submission Restriction and Payment and Gift Provisions, but only as to Section 208 blind, disabled, or illiterate voters.

Therefore, Plaintiffs' Motion for Preliminary Injunction (Doc. # 34) is **GRANTED IN PART**. The court **GRANTS** the following, modest relief, narrowly tailored to these circumstances:

   a.   Defendant Marshall, together with his agents, officers, employees, and successors are **ENJOINED** from implementing or enforcing SB 1's Submission Restriction and Payment and Gift Provisions, Ala. Code § 17-11-4(c)(2), § 17-11-4(d)(1) to (d)(2), but

---

[1] To be sure, a careful review shows that the two sets of declarations actually are not "competing." That is, the declarations submitted by Defendant can all be true (there has been past fraud and Section 208 voters perhaps can choose people not within the scope of SB 1 to assist them). And, at the same time, the declarations submitted by Plaintiffs can also be true (application of SB 1 to Section 208 voters may result in limiting those persons from exercising their choice about who will provide them federally mandated voting assistance).

only as to blind, disabled, or illiterate voters, within the meaning of Section 208 of the

Voting Rights Act, who request assistance from a person of that voter's choice.

b.   In addition, Defendant Marshall **SHALL** issue corrective instructions stating that the

SB 1's Submission Restriction and Payment and Gift Provisions have been preliminary

enjoined as to blind, disabled, or illiterate voters and are not enforceable as to blind,

disabled, or illiterate voters, within the meaning of Section 208 of the Voting Rights

Act, who request assistance from a person of that voter's choice.

In all other respects, Plaintiffs' Motion for Preliminary Injunction (Doc. # 34) is **DENIED**.

**DONE** and **ORDERED** this September 24, 2024.

_R. David Proctor_

**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE