FILED

2024 Oct-04  AM 11:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ALABAMA STATE CONFERENCE OF** | } | |
| **THE NAACP, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | **Case No.:  2:24-cv-00420-RDP** |
| **v.** | } | |
| | } | |
| **STEVE MARSHALL, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>ORDER</u>

This matter is before the court on Defendant Marshall's Motion to Stay Injunction Pending Appeal. (Doc. # 78). The Motion has been fully briefed. (Docs. # 82, 83). For the reasons stated below, the Motion (Doc. # 78) is due to be denied.

In reading Defendant's Motion, one would think the court has enjoined Defendant from enforcing the entirety of Alabama Senate Bill 1 ("SB 1"). To the contrary, the court entered a limited injunction, which prohibits enforcement of SB 1 only to the extent that law is preempted by Section 208 of the Voting Rights Act ("VRA"). Particularly in light of the tone of Defendant's Motion, it is appropriate to put the court's limited injunction into perspective.

## I.     The Court's Narrowly Tailored Injunction is Applicable to Only A Small Subset of Potential Voters

This case was initiated by four organizational Plaintiffs representing various constituencies covering essentially all voters in Alabama. (Doc. # 1 ¶¶ 12-32). Plaintiffs challenged four provisions of SB 1 that placed new restrictions on who could assist voters in obtaining absentee

ballots.[1] The Prefilling Restriction of SB 1 criminalizes the act of distributing an absentee ballot application that is prefilled with any required information. Ala. Code § 17-11-4(b)(2). The Submission Restriction criminalizes the act of returning a potential voter's absentee ballot application. Ala. Code § 17-11-4(c)(2). The Payment and Gift Provisions criminalize the act of accepting anything of value from or providing anything of value to a third party for distributing, ordering, requesting, collecting, prefilling, completing, obtaining, or delivering a voter's absentee ballot application. Ala. Code § 17-11-4(d)(1) to (d)(2).

Plaintiffs' Complaint contained six counts and asserted the following claims: Count One asserted a Violation of the First Amendment (Free Speech) claim by all Plaintiffs against all Defendants (Doc. # 1 ¶¶ 121-33); Count Two asserted a Violation of the First Amendment (Freedom of Association) claim by all Plaintiffs against all Defendants (*Id*. ¶¶ 134-42); Count Three asserted a Violation of the First and Fourteenth Amendments (Void for Vagueness, Denial of Due Process) claim by all Plaintiffs against all Defendants (*Id*. ¶¶ 143-50); Count Four asserted a Violation of the First Amendment (Overbreadth) claim by all Plaintiffs against all Defendants (*Id*. ¶¶ 151-57); Count Five asserted a Violation of Section 208 of the VRA (§ 208) claim by all Plaintiffs against all Defendants (*Id*. ¶¶ 158-66); and Count Six asserted a Violation of the Supremacy Clause and the Help America Vote Act (HAVA Preemption) claim by Plaintiff ADAP against all Defendants. (*Id*. ¶¶ 167-73).

On August 21, 2024, the court dismissed five of Plaintiffs' six claims in the Complaint (Counts One through Four, and Six). (Docs. # 69, 70). The court also dismissed a portion of the

---

[1] Absentee voting in Alabama is already limited. To obtain an absentee ballot, a voter must show that he/she: (i) will be absent from the county on Election Day; (ii) is ill or has a physical disability that prevents a trip to the polling place; (iii) is a registered Alabama voter living outside the county; (iv) is an appointed election officer or poll watcher at a polling place other than their regular polling place; (v) is working a required shift of ten hours or more that coincides with polling hours; (vi) is a caregiver for a family member (to the second degree of kinship) and the family member is confined to their home; or (vii) is incarcerated in prison or jail, but has not been convicted of a felony involving moral turpitude. Ala. Code § 17-11-3; (Doc. # 1 ¶ 47).

claim in Count Five, rejecting the assertion that the Prefilling Restriction, Alabama Code § 17-11-4(b)(2), was preempted by Section 208 of the Voting Rights Act. (*Id.*).

The court held only that a portion of Count Five, which asserts that the Submission Restriction and the Payment and Gift Provisions of SB 1 violate § 208 of the VRA, stated a claim. The court allowed Plaintiffs to proceed on that single portion of that one claim. (*Id.*). Notably, § 208 of the VRA only applies to disabled, blind, and illiterate voters. 52 U.S.C. § 10508. Thus, the court allowed all provisions of SB 1 to go into effect with regard to all applicants for absentee ballots except § 208 voters. (*Id.*).

One month after filing their Complaint, Plaintiffs filed a Motion for Preliminary Injunction. (Doc. # 34). In that motion, Plaintiffs sought to enjoin Marshall (and a number of other then existing Defendants) from enforcing each of the challenged provisions of SB 1 as to all potential absentee voters. (*Id.* at 1-2).

After the court granted in large part Defendants' Motion to Dismiss – dismissing Secretary of State Allen as a Defendant, and dismissing five of Plaintiffs' six claims, and the sixth claim in part – the court turned to Plaintiffs' Motion for Preliminary Injunction. Again, that Motion originally sought to enjoin Defendants from implementing or enforcing all four Challenged Provisions of SB 1 as to all absentee ballot applications. (Doc. # 34). The court noted, however, that in light of the dismissal of most of Plaintiffs' claims, its consideration of the requested injunction would necessarily be vastly curtailed. (Doc. # 76 at 3).

Before addressing the Motion for Preliminary Injunction, the court conducted a status conference with the parties to discuss how to proceed to evaluate the Motion. (Doc. # 68). During the status conference, the court noted that (1) the remaining portion of the claim in Count Five, alleging that the three provisions of SB 1 were preempted by § 208, appeared to raise a purely

legal issue, and, for that reason, (2) the court was not certain an evidentiary hearing was necessary. Plaintiffs agreed no hearing was necessary. Defendant *strenuously* objected to this approach. Therefore, although surprised, the court directed the parties to meet and confer about what evidence they anticipated would be presented at a hearing on the Motion for Preliminary Injunction, to proffer that evidence to the court, and to file a joint report about these matters. (*See* Doc. # 72).

## II.    A Stay of the Court's Narrow Injunction is Not Warranted

In determining whether a stay is warranted, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). To satisfy his burden under the first two factors, "the party seeking the stay must show more than the mere possibility of success on the merits or of irreparable injury." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019) (internal citations omitted). Defendant cannot succeed on any of these factors.

 First, based on § 208's text and legislative history, Defendant is unlikely to succeed on the merits. (Doc. # 69 at 49-60; Doc. # 76 at 3-5). Second, Defendant cannot show the state will suffer any injury from the injunction. (Doc. # 76 at 6-7). Third, it is Plaintiffs (and, even more significantly, § 208 voters statewide) who would be irreparably injured by a stay. (*Id*. at 5-6). Fourth, the public would likewise suffer if a stay were entered and federally mandated assistance for § 208 voters was curtailed. (*Id*. at 6-7). Finally, despite Defendant's attempt to manufacture disputes of fact, the issue of whether § 208 preempts SB 1 involves a "pure legal question," which

plainly does not require an evidentiary hearing to resolve it. (*Id*. at 8-9). The court addresses these factors below, although in a slightly different order.

### A.      Conflict Preemption is a Legal Issue

As grounds for its Motion to Stay the Injunction, Defendant argues that Plaintiffs "have not proven that even one § 208 voter is so seriously and immediately burdened by SB 1 that the 'extraordinary and drastic remedy' of a preliminary injunction is warranted." (Doc. # 78). But, that argument entirely misses the mark. The court's injunction was based on the purely legal issue of whether SB 1 is in conflict with § 208 and therefore preempted. The three provisions of SB 1 that this court enjoined – and again, enjoined only as applied to blind, disabled, and illiterate voters who are otherwise eligible to vote absentee in the first place – are irreconcilably in conflict with § 208 *as a matter of law*. To say that these voters have other people who could help them (Doc. # 78 at 3-4, 6, 9) is beside the point. Section 208 guarantees blind, disabled, and illiterate voters the "assistance by a person of the *voter's* choice," 52 U.S.C. § 10508 (emphasis added), with *only* two exceptions which are not relevant here.

To be clear – and after reading Defendant's papers, the court perceives that there is a need to be clear – the court's Preliminary Injunction Order was based on "the legal doctrine of conflict preemption[.]" *Gallardo by & through Vassallo v. Dudek*, 963 F.3d 1167, 1174 (11th Cir. 2020), *aff'd sub nom. Gallardo By & Through Vassallo v. Marstiller*, 596 U.S. 420 (2022). "Preemption is a question of law." *MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1117 (9th Cir. 2020) (internal quotation omitted); *see also Michigan Consol. Gas Co. v. Panhandle E. Pipe Line Co*., 887 F.2d 1295, 1299 (6th Cir. 1989) (noting that issues of federal preemption are questions of law).

Section 208 guarantees that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a *person of the voter's*

*choice*." 52 U.S.C. § 10508 (emphasis added). Thus, any law that limits a § 208 voter's choice or provides additional exceptions to this right unduly burdens the rights of § 208 voters, and is, as a matter of law, in conflict with § 208. *See, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 615 (5th Cir. 2017) ("It should go without saying that a state cannot restrict this federally guaranteed right [under § 208] by enacting a statute tracking its language, then defining terms more restrictively than as federally defined."); *League of Women Voters of Ohio v. LaRose*, 2024 WL 3495332, at *11 (N.D. Ohio 2024) ("Section 208 does not say . . . that disabled voters are limited to 'a person of the voter's choice from a list to be determined by the several states.'"); *Ark. United v. Thurston*, 626 F. Supp. 3d 1064, 1086 (W.D. Ark. 2022) ("where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent") (quoting *Hillman v. Maretta*, 569 U.S. 483, 496 (2013)). The state's position is that the Submission Provision should be read in harmony with SB 1's other provisions that authorize § 208 voters to be given voting assistance by anyone other than a "paid ballot harvester." (Doc. # 83 at 2). Under § 208, this is a non-starter; this is because, simply put, it impermissibly limits a § 208 voter's choice. Plaintiffs have proffered anecdotal evidence of actual § 208 voters who will not be permitted to choose who will assist them in applying to vote absentee. But there is a more significant point here: it is as tautological as it is true that SB 1's language, on its face, is in conflict with these voters' federal rights, and limiting their choice unduly burdens those rights.

## B.    Section 208 Voters Will Be Irreparably Harmed by a Stay of the Injunction

Defendant argues that the court need not enjoin SB 1 because § 208 voters will have access to "potentially millions of unpaid assistors" to provide assistance (Doc. # 78 at 6), which is adequate to give them the assistance they need. This argument is a misfire. The question here is

not whether a voter, in a general sense, has an adequate opportunity to obtain assistance. The right enshrined by § 208 is that the voter (not some other person or entity) may choose who they desire to provide assistance. In § 208, Congress decided that blind, disabled, and illiterate voters' choices as to an assistor could only be limited in two respects (again, not relevant here). Alabama has no right to further limit that choice because further limitations on the ability of blind, disabled, and illiterate voters to choose an assistor would place an undue burden on their right to choose, which is guaranteed by § 208. Perhaps this point bears repeating – the right guaranteed by § 208 is the disabled, blind, or illiterate *voter's choice*.

Denial of the right to choose their assistors would work irreparable harm on these disabled, blind, and illiterate voters who have a greater need for assistance than other voters. "The denial of an opportunity to cast a vote that a person may otherwise be entitled to cast – even once – is an irreparable harm." *Gonzalez v. Kemp*, 470 F. Supp. 3d 1343, 1351 (N.D. Ga. 2020), *aff'd sub nom. Gonzalez v. Governor of Georgia*, 978 F.3d 1266 (11th Cir. 2020) (quoting *Jones v. Governor of Fla.*, 950 F.3d 795, 828 (11th Cir. 2020)) (internal quotations omitted).

This same principle explains why Defendant's protestations about voter fraud in the § 208 context are off the mark. Defendant urges that SB 1 passes muster because the Alabama Legislature examined the historical record and determined that proactive and preventative measures were necessary to deal with pernicious actors and ballot brokers who may target vulnerable absentee voters. Of course, as an initial matter, this argument wholly ignores the fact that the court agreed that the Legislature had every right to act in the area of ballot harvesting, generally. (Doc # 69 at 42). After all, the court rejected each of Plaintiffs' challenges to SB 1 with one exception – in the limited area of SB 1's encroachment into § 208 voters' rights. In that limited area, the court

concluded that the Alabama Legislature may not override a § 208 voter's right to be given assistance by a person of the voter's choice.

Similarly, the text and rationale of § 208 answers Defendant's assertion that SB 1 should be upheld here because it is actually designed to protect § 208 voters (along with other voters), and to maintain election integrity. That is, § 208 itself supplies the response to Defendant's insistence that § 208 voters are vulnerable and must be protected from manipulation and undue influence. And that answer is this: Congress determined that the best measure to protect § 208 voters against manipulation and improper influence is to allow those voters themselves to choose who will give them assistance.  S. Rep. No. 97-417, at 62 (1982) ("the only way to assure meaningful voting assistance and to avoid possible intimidation or manipulation of the [§ 208] voter" is to permit them "to have the assistance of a person of their own choice.").

### C.        Defendant Is Unlikely to Prevail on Appeal

This point also shows why Defendant's argument that he "will likely win on appeal" fails. Defendant's argument completely ignores that Congress placed the voter's *choice* at the center of its § 208 guaranteed right. As the court noted in its opinion dismissing all of Plaintiffs' other claims (other than their § 208 claim), when reviewing whether a federal statute preempts a state statute, the court asks whether compliance with both federal and state law is impossible or whether the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). The court found § 208 "ambiguous" only as to the scope of the "choice" that Congress intended to provide for covered voters. (Doc. # 76 at 4). In resolving this ambiguity, the court examined § 208's legislative history and determined that "Congress intended that state laws which unduly burden the right recognized in Section 208 are preempted." (*Id*.). *See Club Madonna Inc.*

8

*v. City of Miami Beach*, 42 F.4th 1231, 1253 (11th Cir. 2022) (noting that courts must "examine the statutory text, its regulatory framework, and, if necessary, the legislative history," to decide whether Congress deliberately chose to preempt state law). In making that assessment, the court looked to the legislative history of § 208, and found it contains a "clear statement" of intent to preempt certain state laws that would contravene (or unduly burden) a § 208 voter's right to receive assistance from a person of the voter's choice. *See* S. Rep. No. 97-417, at 63 (1982).

The court also previously noted that the fact that the Senate report specifically addressed the issue of preemption shows two things. First, the Senate Judiciary Committee was well aware that there may be situations in which state laws are in conflict with the federal rights created by § 208. Second, the committee contemplated that some of those laws would be preempted. That is, the committee "recognize[d] the legitimate right of any state to establish necessary election procedures, subject to the overriding principle that such procedures shall be designed to protect the rights of voters." *Id.* But, at the same time, in the § 208 context, state provisions would be preempted if they *unduly burden* the right of § 208 voters to make the choice about who will assist them.

SB 1's Submission Restriction criminalizes the act of returning another person's absentee ballot application. That is, SB 1's Submission Restriction flatly prohibits third-party ballot-return assistance to disabled, blind, or illiterate voters needing such assistance; therefore, it unduly burdens the right to assistance protected under Section 208. Similarly, the court concluded that "SB 1's Payment and Gift Provisions are in direct conflict with Section 208 because their restrictions would unduly burden the rights of blind, disabled, or illiterate voters to obtain third-party assistance in all actions necessary to make their votes effective." (Doc. # 69 at 58 (citing *Carey*, 624 F. Supp. 3d at 1033; *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d

158, 235-36 (M.D.N.C. 2020); *Arkansas United v. Thurston,* 626 F. Supp. 3d 1064, 1085 (W.D. Ark. 2022)).

Thus, it is this court's view that Plaintiffs are the ones who are likely to succeed on the merits of their limited remaining conflict preemption claim because, as discussed above, the provisions of SB 1 conflict with § 208 as a matter of law. In enacting § 208, Congress guaranteed disabled, blind, and illiterate voters the right to an assistor of their choice in all aspects of voting.

### D.      The Public Interest Supports the Limited Injunction Entered by the Court

It is clearly in the public's interest to ensure that every blind, disabled, and illiterate voter who is eligible to vote absentee may exercise that right. *See Ga. Coal. for the People's Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251, 1268 (N.D. Ga. 2018). While the harm to these voters will be great if these provisions of SB 1 are not enjoined, Alabama will not suffer harm in enforcing its laws in a manner consistent with the VRA. The injunction still allows Defendant to ferret out and prosecute fraud and all other election crimes involving any voter or assistor. (*See* Doc. # 76 at 11). The court's injunction only addresses a small subsection of an even more limited voter population that is eligible to vote absentee. And, Congress plainly granted this small subsection of voters the right to choose who will assist them in this aspect of the voting process.

## III.     Conclusion

The injunction is very narrow. The court is not opening the door to a flood of fraudulent voting by (or related to) disabled, blind, and illiterate absentee voters. Defendant Marshall's Motion to Stay Injunction Pending Appeal (Doc. # 78) is **DENIED**.

**DONE** and **ORDERED** this October 4, 2024.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE